**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

INTERFAITH CENTER ON CORPORATE
RESPONSIBILITY, JAMES MCRITCHIE,
and AS YOU SOW,

                Plaintiffs,

      v.

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

              Defendant.

Civil Action No. 1:21-cv-01620-RBW

**BRIEF OF AMICUS CURIAE THE CHAMBER OF COMMERCE
OF THE UNITED STATES OF AMERICA IN SUPPORT OF
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Local Rule 7(o) and Federal Rules of Appellate Procedure 29(a)(4) and 26.1, amici state as follows:

The Chamber of Commerce of the United States of America (the "Chamber") states that it is a non-profit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporations, and no publicly held company has 10% or greater ownership in the Chamber.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT........................................................................ i

TABLE OF AUTHORITIES.......................................................................................................iii

INTEREST OF AMICUS CURIAE ......................................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................ 2

ARGUMENT............................................................................................................................ 4

I.      The Commission's updates to Rule 14a-8 are a significant improvement to the policies balancing the costs and benefits of shareholder access to corporate proxy statements.................................................................................................................... 4

      A.    Rule 14a-8's revised eligibility requirements better demonstrate a shareholder's meaningful economic investment or interest in a company... 6

      B.    Rule 14a-8's updated resubmission thresholds will significantly improve the quality of shareholder proposals. ....................................................................... 8

      C.    Rule 14a-8's enhanced representative documentation requirements will reduce costs and improve transparency between shareholders and companies. ............................................................................................................ 10

      D.    Rule 14a-8's improved shareholder engagement provision will increase communication between shareholders and companies................................. 11

      E.    Extending Rule 14a-8's one-proposal limit to proxy submissions is a reasonable way to close the loophole to the rule limiting submissions to one per "each shareholder." ..................................................................................... 12

II.     The SEC satisfied the requirements of the APA in amending Rule 14a-8............. 13

CONCLUSION ...................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Equity Inv. Life Ins. Co. v. SEC,*
    613 F.3d 166 (D.C. Cir. 2010)..............................................................................13

*Bus. Roundtable v. SEC,*
    647 F.3d 1144 (D.C. Cir. 2011)............................................................................13

*Chamber of Commerce v. SEC,*
    412 F.3d 133 (D.C. Cir. 2005)..........................................................................13, 14

*FCC v. Prometheus Radio Project,*
    141 S. Ct. 1150 (2021)........................................................................................15

**Statues & Regulations**

5 U.S.C. § 706 ..............................................................................................................4, 13

15 U.S.C. § 78c..............................................................................................................13

15 U.S.C. § 78n..............................................................................................................3

17 C.F.R. § 240.14a-8 ....................................................................................................8

*Adoption of Amendments Relating to Proposals by Security Holders*, 41 Fed.
    Reg. 52,994 (Dec. 3, 1976) .............................................................................12

*Amendments to Rule 14a-8 under the Securities Exchange Act of 1934 Relating*
    *to Proposals by Security Holders*, 48 Fed. Reg. 38,218 (Aug. 23, 1983) ................6

*Amendments to Rules on Shareholder Proposals*, 62 Fed. Reg. 50,682 (Sep. 26,
    1997) ................................................................................................................2

*Amendments to Rules on Shareholder Proposals*, 63 Fed. Reg. 29,106 (May 28,
    1998) ................................................................................................................7

*Notice of Proposal to Amend Proxy Rules*, 13 Fed. Reg. 3,973 (July 14, 1948) ....................2, 8

*Procedural Requirements and Resubmission Thresholds under Exchange Act*
    *Rule 14a-8*, 85 Fed. Reg. 70,240 (Nov. 4, 2020) ........................................... *passim*

**Other Authorities**

Letter from Tom Quaadman, Executive Vice President, U.S. Chamber
    Center for Capital Markets Competitiveness, to Vanessa A.
    Countryman, Secretary, U.S. Securities and Exchange Commission
    (Jan. 31, 2020) available at https://www.sec.gov/comments/s7-23-
    19/s72319-6730870-207447.pdf (last visited Nov. 29, 2021) .................................... *passim*

Michael Boyd, *Exxon, Chevron, Shell: Death by ESG*, Seeking Alpha (May
    28, 2021), https://seekingalpha.com/article/4431884-exxon-chevron-
    shell-death-by-esg ............................................................................................................6

## INTEREST OF AMICUS CURIAE

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus curiae briefs in cases, like this one, that raise issues of concern to the nation's business community.

This litigation challenging the SEC's long-overdue reform of the shareholder-proposal process under Rule 14a-8, *Procedural Requirements and Resubmission Thresholds under Exchange Act Rule 14a-8*, 85 Fed. Reg. 70,240 (Nov. 4, 2020), presents an issue of significant importance to public companies in America. The Chamber's Center for Capital Markets Competitiveness submitted a fifteen-page comment letter in support of the SEC's proposing release.[1] The Chamber, its members, and the community of publicly traded companies strongly support the SEC's reasonable reforms to modernize rules that have not been updated in a generation—and with respect to some aspects of Rule 14a-8,

---

[1] Letter from Tom Quaadman, Executive Vice President, U.S. Chamber Center for Capital Markets Competitiveness, to Vanessa A. Countryman, Secretary, U.S. Securities and Exchange Commission (Jan. 31, 2020) available at https://www.sec.gov/comments/s7-23-19/s72319-6730870-207447.pdf (last visited Nov. 29, 2021) [hereinafter "Chamber Comment"].

in several generations. If the sensible reforms adopted by the SEC are vacated and set aside, as the Plaintiffs seek, then the shareholder proposal system will devolve back to a free-for-all that a small minority of special interests use to advance their idiosyncratic social and policy agendas at the expense of Main Street investors.  For this reason, the Chamber submits this brief to apprise this Court of the economic and business justifications for the SEC's 2020 rulemaking.

## SUMMARY OF ARGUMENT

Effective communication between public companies and investors is a bedrock principle of our capital markets. Rule 14a-8 of the Securities Exchange Act helps facilitate this communication by providing "an opportunity for any shareholder owning a relatively small amount of the company's shares to have his or her own proposal placed alongside management's proposals in the company's proxy materials." *Amendments to Rules on Shareholder Proposals*, 62 Fed. Reg. 50,682, 50,682 (Sep. 26, 1997).

But investor access to proxy statements also has substantial costs. In order to balance these considerations, the SEC has, since Rule 14a-8's introduction, placed restrictions on shareholder access to proxy statements. *Notice of Proposal to Amend Proxy Rules*, 13 Fed. Reg. 3,973 (July 14, 1948).

Although these restrictions have been periodically adjusted and updated to reflect experience with the system and economic changes, such as inflation, Rule 14a-8's

shareholder ownership thresholds have not been updated since 1998, and its resubmission thresholds have not been updated since 1954. *See* Chamber Comment at 1.

The Commission's recent updates to Rule 14a-8 are not only reasonable—they are also essential to ensure that Rule 14-a-8 continues to strike the correct balance between shareholder access and the costs that access imposes on companies and other investors. The SEC's modernization of the long-standing restrictions in Rule 14a-8 provide important protections against costly shareholder requests for company disclosures, policy changes, and governance changes that are not material to the issuer's business while allowing for greater focus and attention to be paid to meritorious proposals that truly do affect the long-term performance of the company. *See* Chamber Comment at 2-3.

The changes also fall squarely within the Commission's powers. Section 14a of the Exchange Act specifically authorizes the Commission to promulgate rules governing "any person" who "solicit[s] any proxy," that it finds "necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a)(1). The Commission underwent a thorough notice-and-comment process and adequately explained the policy reasoning behind the changes that the Plaintiffs now challenge. The Commission's ultimate changes were measured and reasonably tailored to improve shareholder communication and limit the abuse of the proxy proposal system, which had become

rampant and widespread in recent years. For these reasons, the Court should reject Plaintiffs' challenges under the Administrative Procedure Act. 5 U.S.C. § 706(2).

## ARGUMENT

I. **The Commission's updates to Rule 14a-8 are a significant improvement to the policies balancing the costs and benefits of shareholder access to corporate proxy statements.**

The shareholder-proposal system is designed to allow investors to put forth constructive ideas on how to improve a company's governance and financial performance. The SEC has always attempted, however, to strike a balance between access and abuse in giving shareholders access to company proxy statements. To this end, since Rule 14a-8's inception in 1948, the Commission has implemented process requirements and content restrictions on shareholder proxy submissions.

These restrictions serve an important purpose. Whether valid or frivolous, in the aggregate shareholder proxy proposals cost companies, and ultimately other shareholders, tens of millions of dollars each year. 85 Fed. Reg. at 70,245 & n.64 (collecting comment letters reflecting costs of each proposal ranging from $20,000 to $150,000 and citing the Chamber's Comments (at 6), which affirm the SEC's range of $87,000-$150,000 as "a fair estimate for a typical proposal"). There is also the opportunity cost for the board and management to consider and discuss proposals that do not truly affect the financial performance of the company and thus take away time and resources from other proposals that do. And non-proponent shareholders must process, analyze, and vote on

them. When shareholders must sort through pages of proposals, they, too, are less likely to devote the time and energy necessary to properly consider genuine proposals. Ironically, this means that too few restrictions on proxy statements can hinder the communication that Rule 14a-8 is intended to facilitate.

The burden that the broken 14a-8 system places on companies and their shareholders also serves to make the public-company model less attractive. The number of public companies has been steadily declining in the United States—with fewer listed today than in 1976. *See* Chamber Comment at 3 n.5. This change has occurred even though the U.S. is now home to roughly 100 million more people than in 1976 and our economy is three times as large. *Id.* The decline in public companies jeopardizes the ability of American households to build wealth and choose the companies they invest in.

Although the decline in companies is a multi-faceted issue, the increasingly cumbersome shareholder-proposal process has been one significant contributing factor. No company wants to go public only then to find itself subject to endless embarrassing and costly proposal campaigns waged by individuals who have no genuine interest in the company's well-being. Indeed, some activist shareholder proposals are clearly aimed at *destroying* current public companies, such as numerous proposals to require oil-and-

gas companies to become carbon neutral by 2050 that are nothing short of calls for them to stop being oil-and-gas companies entirely.[2]

The rules that existed prior to the Commission's 2020 amendments allowed a subset of activists to commandeer the shareholder-proposal process for their own parochial ends. Each of the changes adopted by the Commission was an incremental yet important addition to corporate governance and shareholder-corporation communication. Each of the changes was long overdue.

A.     **Rule 14a-8's revised eligibility requirements better demonstrate a shareholder's meaningful economic investment or interest in a company.**

The SEC first established the ownership-threshold requirement for shareholders to submit proposals on company proxy sheets in 1983. *Amendments to Rule 14a-8 under the Securities Exchange Act of 1934 Relating to Proposals by Security Holders*, 48 Fed. Reg. 38,218 (Aug. 23, 1983). This requirement is perfectly sensible: Shareholders who have sufficient skin in the game (so to speak) are less likely to use Rule 14a-8's submission system for purposes that do not align with the interests of the company and other shareholders. Reasoning that this kind of abuse "could be curtailed by requiring shareholders who put the company and other shareholders to the expense of including a proposal in a proxy

---

[2] The "investors" who are pushing for these changes are of course not increasing their investments even in the oil and gas companies that are implementing the very policies they demand. That is because they are not seeking to improve those companies as investments: their goal is the elimination of the use of fossil fuels. *See* Michael Boyd, *Exxon, Chevron, Shell: Death by ESG*, Seeking Alpha (May 28, 2021), https://seekingalpha.com/article/4431884-exxon-chevron-shell-death-by-esg.

statement to have some measured economic stake or investment interest in the corporation," *id.* at 38,219, the Commission established that submitters must hold "at least 1% or $1,000 in market value of securities entitled to be voted at the meeting" for at least one year. *Id.* at 38,222.

Of course, this threshold must be periodically updated to reflect changes in inflation, the current state of the market, and shareholder-company dynamics. In 1998, the Commission raised this threshold to $2,000—a modest and measured change. *Amendments to Rules on Shareholder Proposals*, 63 Fed. Reg. 29,106, 29,111-12 (May 28, 1998).

The Commission did not further update the threshold for more than twenty years. As a result, each year the protections were chipped away bit by bit by inflation and market conditions until, in 2020, the Commission finally passed the amendments at issue here.

The Chamber's Comment letter details the abuses that developed in the intervening decades. *See* Chamber Comment at 4-5. In one example, a social-welfare organization that owned no shares of stock in one of its member companies tried to persuade the company to act counter to the company's interests. *Id.* When the company declined the demand, the organization's representative threatened to purchase $2,000 worth of stock, wait a year, and then submit a shareholder proposal to separate the positions of Chairman and Chief Executive Officer, even though that issue was *in no way related* to the matter being discussed. *Id.* Unfortunately, this "nice-company-you-have-

here-would-be-a-shame-if-something-happened-to-it" extortion enabled by the low thresholds regularly repeats itself at many public companies.

The SEC's 2020 amendments wisely implemented a tiered approach to make the rule more dynamic. For those owning stock for three years or more, the threshold remains at $2,000; shareholders who have held stock for two years must own $15,000, and shareholders who purchased shares in the last year must own $25,000 of stock. 17 C.F.R. § 240.14a-8(b). This allows for the best of both worlds—small owners with a demonstrated long-term commitment to a company see no increase in the amount of shares they must own to issue a proxy statement. However, it makes it much harder for parties who are not truly concerned with the company's financial performance to cheaply purchase a ticket to meddle with corporate governance to pursue their own social and political agendas at the expense of all other shareholders and the economy more broadly.

**B.      Rule 14a-8's updated resubmission thresholds will significantly improve the quality of shareholder proposals.**

Since the inception of Rule 14a-8 in 1948, the Commission has placed limits on the resubmission of proposals "which have been previously submitted to security holders without evoking any substantial security holder interest therein." 13 Fed. Reg. at 3,974. Prior to the SEC's 2020 amendments, Rule 14a-8(i)(12) barred companies from excluding any proposal that was already rejected once in the last five years if it received more than 3% of shareholder votes; twice in the last five years if it received more than 6% of the votes; or three times in the last five years if it received more than 10%.

The result: Many shareholder proposals were submitted repeatedly without ever coming close to gaining majority support, thus becoming what the Chamber has termed "zombie" proposals. Proponents were allowed to resubmit a proposal even if nearly 90% of shareholders rejected it on multiple occasions. Allowing for such recidivism of unpopular submissions created significant expenses and distractions for companies and shareholders trying to focus on legitimate questions of governance. Continuous resubmissions are a drain on shareholders and companies alike. As detailed further in the Chamber's Comment letter, resubmission proposals are almost one-third of shareholder proposals. These multitudes of unviable proposals, requiring significant time and monetary resources to defend against proposals that have time and again been rejected, serve as a drag on Main Street investors. *See* Chamber Comment at 12.

The new resubmission thresholds strike an appropriate balance between reducing costs associated with frivolous, unpopular petitions, while preserving shareholders' ability to continue to engage companies and other shareholders. The first resubmission threshold was increased only by 2% (from 3% to 5%), which means that it is not significantly harder to overcome one rejection than under the previous rule. 85 Fed. Reg. at 70,258. The thresholds increase, however, for proposals that have been rejected two or more times (to 15% and 25% respectively). *Id*. This enhanced sliding-scale approach will improve the overall quality of submissions, reduce the otherwise excessive quantity of meritless proposals, and incentivize shareholders to submit proposals on matters that

will resonate with a broader base to avoid future exclusion. *See* Chamber Comment at 13-15.

### C.    Rule 14a-8's enhanced representative documentation requirements will reduce costs and improve transparency between shareholders and companies.

Prior to the 2020 changes, Rule 14a-8 did not address a shareholder's ability to submit a proposal through a representative—a relatively common practice that the Commission has now wisely addressed. Prior to the amendment, public companies often found it difficult to ascertain the economic interests of the representative and shareholder, the history of the shareholder's advocacy on the topic in question, or even whether the named shareholder supported the proposal submitted on its behalf. *See* Chamber Comment at 8.

The SEC's 2020 amendments establish commonsense requirements that require shareholder proponents to demonstrate their identity, role, and interest in the proposal. 85 Fed. Reg. at 70,263. Proponents must also identify the specific topic of the proposal and provide statements supporting the proposal and authorizing the representative to submit the proposal and otherwise act on the shareholder's behalf. *Id.*

These new requirements strike an appropriate balance between being minimally burdensome, while ensuring that shareholder proponents have a genuine and meaningful interest in the proposal. This will cut down on abuses by proxies who are not genuinely interested in the company's success and only seek to make a political or social

statement through the proposal. It will also provide meaningful context to the company and other investors who are considering the proposal and allow them to develop a better understanding of the shareholders making use of the proposal system and, thus, to make a more informed decision.

### D. Rule 14a-8's improved shareholder engagement provision will increase communication between shareholders and companies.

The Chamber has long promoted effective communication between public companies and their investors as an essential feature of our capital markets. *See* Chamber Comment at 11. Our members' experiences have demonstrated that as communication increases, costs and conflicts decrease. *Id.* at 10. The SEC's 2020 amendment to Rule 14a-8(b)'s shareholder-engagement requirements directly advance these goals.

The amended Rule 14a-8(b) requires shareholder proponents to provide the company with contact information and specified times in which they are available to discuss the proposal. 85 Fed. Reg. at 70,253. These requirements impose minimal burdens upon proponents and facilitate an inexpensive and straightforward way for a company to communicate with a shareholder-proponent to understand the proposal and the concerns that led the shareholder to submit it. It may be that the proponent and the company are able to discuss the issues and arrive at some resolutions that will obviate the need for the costly proxy statement process. *See* Chamber Comment at 10-11.

**E.      Extending Rule 14a-8's one-proposal limit to proxy submissions is a reasonable way to close the loophole to the rule limiting submissions to one per "each shareholder."**

Since 1976, Rule 14a-8(c) has tried to prevent "each shareholder" from submitting more than one proposal to a company for a particular shareholders' meeting. 85 Fed. Reg. at 70,254. This was intended to place all shareholders on equal footing by preventing an individual shareholder from flooding proxy statements with their preferred issues. *Id.* at 70,255; *see also Adoption of Amendments Relating to Proposals by Security Holders*, 41 Fed. Reg. 52,994, 52,995-96 (Dec. 3, 1976). But experience over the last forty-five years has shown that shareholders were capable of gaming this system by submitting multiple statements by acting as proxies for other shareholders. 85 Fed. Reg. at 70,255. This loophole allowed shareholders to submit large groups of similar proposals while providing companies with little ability to communicate meaningfully with the shareholder being represented, or even to ensure that the position genuinely represents that shareholder's position.

Rather than limiting the one-proposal limit to shareholders, the amended Rule 14a-8(c) now applies the one-proposal limit to "each person." Thus, it prevents a shareholder from submitting one proposal in its own name and simultaneously submitting a second proposal as a representative of another shareholder. *See* Chamber Comment at 11. Likewise, the amendment prevents a representative from submitting more than one proposal to be considered at the same meeting, even if for different

shareholders. This change makes it more difficult for shareholders to game the proxy submission system, and better reflects the purpose of the longstanding one-proposal limit. *See* 85 Fed. Reg. at 70,255-56.

## II.   The SEC satisfied the requirements of the APA in amending Rule 14a-8.

The Commission's burden when engaged in rulemaking under the Exchange Act is straightforward and well established. Simply put, the Commission must consider "the public interest," including, "in addition to the protection of investors, whether the action will promote efficiency, competition, and capital formation." 15 U.S.C. § 78c(f). Under the Administrative Procedure Act, the Commission's final rule may be set aside if its consideration of these statutory factors is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Bus. Roundtable v. SEC*, 647 F.3d 1144, 1148 (D.C. Cir. 2011); *Chamber of Commerce v. SEC*, 412 F.3d 133, 143 (D.C. Cir. 2005).

The APA certainly does not grant the Commission a blank check to issue any rules it prefers. The courts have invalidated SEC rules numerous times over the years on the ground that the Commission engaged in economic analysis—whether quantitative or qualitative—that was arbitrary and capricious. *See, e.g.*, *Bus. Roundtable*, 647 F.3d at 1148-50; *Chamber of Commerce*, 412 F.3d at 143-44; *accord Am. Equity Inv. Life Ins. Co. v. SEC*, 613 F.3d 166, 178-79 (D.C. Cir. 2010). Indeed, the Plaintiffs attempt to draw parallels between

the Commission's economic analysis here and the flaws that the D.C. Circuit identified in *Chamber of Commerce* and *Business Roundtable.*

But here, the SEC's 2020 amendments to Rule 14a-8 satisfy the requirements of the APA. In both *Chamber of Commerce* and *Business Roundtable* (and in every other similar case Plaintiffs point to), the Commission failed to consider relevant information; failed to provide a reasonable explanation for ignoring that information; or it selectively engaged in economic analysis, such as quantifying benefits but failing to quantify costs (and failing to offer a reasoned explanation for the disparate approaches). As the Court in *Chamber of Commerce* stated, the Commission fails in its obligation where it does not "do what it can to apprise itself—and hence the public and the Congress—of the economic consequences of a proposed regulation before it decides whether to adopt the measure." 412 F.3d at 144.

The Commission did not fail here, correctly reasoning (and explaining) that its careful and incremental updating of Rule 14a-8 would benefit shareholders, public issuers, and the public more generally, while imposing minimal economic costs. *See* 85 Fed. Reg. at 70,263-86. At root, it is undeniable that "shareholder proposals impose direct and opportunity costs on shareholders and indirect costs on shareholders through their ownership in companies." *Id.* at 70,263. And it is also incontrovertible that over the twenty-plus years since Rule 14a-8 was last amended, shareholders' ability to communicate with a company's board and management and other shareholders has markedly increased "due to technological advancements and developing market

14

practices." 85 Fed. Reg. at 70,263. Thus, there are now far more efficient means than the Rule 14a-8 process for shareholders to engage with boards and management. *Id.* at 70,263. The SEC's amendments thus impose minimal costs on shareholders while winnowing out frivolous, implausible proposals that achieve nothing more than to waste finite corporate resources to the detriment of all shareholders and the public more broadly. *See id.* at 70,264 & 70,272-79. The SEC's ultimate decision to modernize the Rule 14a-8 process was neither arbitrary nor capricious, *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021), and this Court should reject the Plaintiffs' request to vacate and set aside the SEC's final rule.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for summary judgment and grant Defendant's cross-motion for summary judgment.


Dated: December 3, 2021                      Respectfully submitted,


                                             /s/ *Steven P. Lehotsky*
                                             Steven P. Lehotsky (DC Bar No. 992725)
                                             LEHOTSKY KELLER LLP
                                             200 Massachusetts Avenue, NW
                                             Washington, DC 20001
                                             steve@lehotskykeller.com
                                             T: (512) 693-8350

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 3, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.


<u>*/s/ Steven P. Lehotsky*</u>
Steven P. Lehotsky

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LCvR7(o), I certify that this brief is 15 pages and complies with

LCvR5.4 and Federal Rule of Appellate Procedure 29(a)(4).

<u>*/s/ Steven P. Lehotsky*</u>
Steven P. Lehotsky